THE RECTOR, WARDENS AND VESTRYMEN OF ST. JOHN'S CHURCH IN SALEM, A RELIGIOUS CORPORATION, PLAINTIFF, v. DAVID OGDEN EYRE AND VERA SHESTY EYRE, HIS WIFE; RUTH H. JOHNSON; THE MAYOR AND COMMON COUNCIL OF THE CITY OF SALEM, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; THE FIRST BAPTIST CHURCH OF SALEM, NEW JERSEY, A RELIGIOUS CORPORATION; THE HEIRS, DEVISEES AND PERSONAL REPRESENTATIVES, AND THEIR OR ANY OF THEIR HEIRS, DEVISEES, EXECUTORS, ADMINISTRATORS, GRANTEES, ASSIGNS OR SUCCESSORS IN RIGHT, TITLE AND INTEREST OF M. CAROLINE KEASBEY, DECEASED; OF ELIZABETH B. KEASBEY, DECEASED; OF MATTHEW KEASBEY, DECEASED, AND OF ANN FISHER KEASBEY, DECEASED; AND ALL PERSONS CLAIMING BY OR THROUGH THEM OR ANY OF THEM; DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided October 16, 1964.

*Mr. Robert W. Richman,* attorney for plaintiff.

WICK, J. S. C. This is an action to quiet title to certain real estate and to construe a will by which the real estate in question passed to plaintiff's devisor.

Plaintiff The Rector, Wardens and Vestrymen of St. John's Church in Salem was the devisee of a tract of land in the City and County of Salem under the fifteenth clause of the will of Howard B. Keasbey, deceased. It is alleged that Keasbey became the owner in fee of the said tract by virtue of the will of his aunt, M. Caroline Keasbey, deceased. The construction of the will of the aunt is the subject of this suit.

The third clause of the will of M. Caroline Keasbey reads as follows:

"Third; I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal or mixed to my Sister, Elizabeth, for and during the term of her natural life; and, after her decease, I give and devise all of my said real estate to my nephew, Howard B. Keasbey, for and during the term of his natural life, and, after his death to the heirs of his body lawfully begotten; but if my said nephew, Howard B. Keasbey, should die without leaving lawful issue, then the above estate shall descend and go to my nephew, Charles Quinton Keasbey, and my niece Helen Keasbey (children of my brother John) to be devided between them equally, share and share alike, for and during their natural lives, and, after their decease, or the decease of either of them, to their lawful issue  *  *  *
*    *    *    *    *    *    *    *
But, if it should so happen that my nephews, Howard B. Keasbey and Charles Quinton Keasbey, and my niece, Helen Keasbey, should all depart this life without leaving lawful issue, then all my said estate, both real and personal to go to and vest in my sister Elizabeth and her heirs forever  *  *  *"

■■ It is the opinion of this court that the above language has the following meaning:

(1) The Rule in *Shelley's Case* does apply. The Rule was not abrogated in its entirety until 1934. The will of M. Caroline Keasbey was probated in August of 1901. The statute in effect in 1901 was section 10 of the Descent Act. However, as was pointed out in *Neill v. Petry,* 96 *N. J. Eq.* 478 (*Ch.* 1924):

"This section  *  *  *  has no effect beyond the 'single instance where there are children, or the issue of children, in whom the remainder can vest,'  *  *  *." (at *p.* 481)

Therefore, in this case, the Rule in *Shelley's Case* does apply and the interest of Howard B. Keasbey under the will of M. Caroline Keasbey was a remainder in fee tail subject to a condition subsequent.

■■ (2) The limitation over in the will of M. Caroline Keasbey refers to the death of Howard B. Keasbey, Charles Q. Keasbey or Helen Keasbey during the lifetime of Elizabeth.

The limitation over is not void for remoteness. *Morehouse v. Cotheal,* 22 *N. J. L.* 430 (*Sup. Ct.* 1850), cited by plaintiff, was reversed by the Court of Errors and Appeals, at the April term, 1851. As the rule now stands in New Jersey, "die without leaving lawful issue" indicates a definite failure of issue.

■ Although the limitation over was not void, the condition on which it was to take effect was satisfied by Howard B. Keasbey's surviving Elizabeth. In *Davis v. Scharf,* 133 *A.* 197, 198 (*Ch.* 1926; not officially reported), we find:

"* * * then, according to Chief Justice Gummere's second rule of construction in *Patterson v. Madden,* 54 *N. J. Eq.* 714, 36 *A.* 273:

'Such limitation over will be construed to refer to the happening of such event or to the death of the devisee, according as the court may determine from the context of the will and the other provisions thereof, that the limitation clause is set in opposition to the event specified or is connected with the devise itself.'

(1) The accepted rule of construction of wills in this state is, where limitation over upon failure of issue at the death of the devisee is incident to a devise of a remainder upon the termination of a life estate, to refer the limitation clause to the event of the death of the devisee before the death of the life tenant, unless there are indications in the will of a contrary intent."

There are no indications of a contrary intent in the will of M. Caroline Keasbey. The language of the will actually supports this construction. The gift over of the real estate interest, in the event the condition should happen, is to Elizabeth and her heirs. This seems to presuppose that Elizabeth will still be alive at the happening of the condition. The only way that this could occur would be for the condition to refer to the

deaths of Howard B. Keasbey, Charles Q. Keasbey and Helen Keasbey *during* the lifetime of Elizabeth, and this is the construction this court gives it.

Having given this construction to the limitation over, it follows that Charles Q. Keasbey and Helen Keasbey had no further interest under the will of M. Caroline Keasbey once Howard B. Keasbey had survived Elizabeth Keasbey.

■ (3) Plaintiff urges this court to determine, after the above construction is given to the will of M. Caroline Keasbey, that Howard B. Keasbey was the fee simple owner of the land in question. However, the above construction does not lead to this conclusion. After the death of Elizabeth Keasbey, Howard B. Keasbey had a fee tail without limitation. *R. S.* 46:3–15, which abolished estates in fee tail, did not become part of our law until 1934. This statute deals only with writings which "shall hereafter be made." Therefore this statute does not affect the will of M. Caroline Keasbey. The statute in effect in 1901 was the act of 1846, *Rev.* 1877, *p.* 299, § 11, which reads in part:

"* * * every such conveyance or devise shall vest an estate for life only, in such grantee or devisee, who shall possess and have the same power over, and right in, such premises, and no other, as a tenant for life thereof would have by law; and upon the death of such grantee or devisee the said lands and tenements shall go to, and be vested in the children of such grantee or devisee, * * *."

The law in effect in 1901, therefore, would convert the fee tail into a life estate in Howard B. Keasbey, with a vested remainder in fee simple in his children, if he had had children, but not into a fee simple in Howard B. Keasbey.

■ (4) Since the above construction is given to the will of M. Caroline Keasbey, it is evident that the will did not dispose of all of the property. There is a remainder interest after the fee tail, and this was not devised. It is the residuary clause that fails to dispose of all of the property in question, so this reversionary interest must pass by intestacy.

Based on the foregoing, it is the opinion of this court that title to the land in question is determined as follows: As of

the time of her death the heirs of M. Caroline Keasbey were: (1) a sister, Elizabeth B. Keasbey; (2) a nephew, Howard B. Keasbey, son of a deceased brother of Caroline; (3) a nephew, Charles Quinton Keasbey, and a niece Helen Keasbey Knight, children of a deceased brother of Caroline. By application of the intestacy law in effect in 1901, this property passed one-third to Elizabeth, one-third to Howard, one-sixth to Charles and one-sixth to Helen.

Elizabeth Keasbey died intestate in 1902. At the time of her death her heirs were: (1) a nephew, Howard Keasbey, son of a deceased brother of Elizabeth, and (2) a nephew, Charles Q. Keasbey, and a niece, Helen Keasbey Knight, children of a deceased brother of Elizabeth. By application of the intestacy law in effect in 1902, her one-third interest in the property in question passed one-sixth to Howard and one-twelfth each to Charles and Helen.

Charles Quinton Keasbey died testate in 1918. He devised all of his real estate to Helen Keasbey Knight, thereby passing his interest in the property in question on to her. By adding these fractions together, title to the property in 1918 is found to be in Helen Keasbey Knight and Howard Keasbey, each with a one-half interest.

Helen Keasbey Knight died in 1957, testate, whereby she devised all of her real estate to Ormsby P. Eyre. The said Ormsby P. Eyre died in 1960, intestate, leaving surviving him as his only heirs at law his widow, Ruth H. Eyre (now remarried), and a son, David Ogden Eyre.

Howard B. Keasbey died testate January 10, 1964, having no children begotten by him. His will attempts to pass *all* of the land in question to the plaintiff, but can only pass the interest in the land that Howard B. Keasbey did actually own, that is, a one-half interest.

The decision of this court is that the title to the real estate in question is presently as follows: (1) one-half in fee simple in plaintiff, and (2) the other half in fee simple in David Ogden Eyre, subject to the dower interest of Ruth Eyre Johnson.